# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 21, 2007

Charles R. Fulbruge III
Clerk

No. 06-41447
Summary Calendar

ALFRED R RAMIREZ

Plaintiff-Appellant

v.

DAVID STACKS, individually and in his official capacity as Senior
Warden; DAVID ONURA, individually and in his official
capacity as Legal Custodian over confinement; ROBERT YOUNG,
individually and in his official capacity as Physician
Assistant; DR BETTY WILLIAMS, individually and in her official
capacity as Dr at University of Texas Medical Branch;
DR STANLEY D ALLEN, individually and in his official capacity
as Dr for University of Texas Medical Branch; MIKE MEGNA,
individually and in his official capacity as University of Texas
Medical Brach Administrator; GLENDA ADAMS, individually and in
her official capacity as Agency for University of Texas Medical
Branch Administrator; SHANTA CRAWFORD, individually and in her
official capacity as University of Texas Medical Branch Employee

Defendants-Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 9:06-CV-15

Before KING, DAVIS and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Alfred R. Ramirez, Texas prisoner # 593092, appeals from the district court's dismissal of his 42 U.S.C. § 1983 action as frivolous. Ramirez contends that he received constitutionally inadequate medical care. He further contends that the magistrate judge made impermissible credibility and factual findings that should have been made by a jury.

Ramirez's medical records were authenticated. The magistrate judge thus could rely on those records to make findings as to whether Ramirez received constitutionally inadequate care for his tibia fracture, without making impermissible credibility determinations. See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).

The records in Ramirez's case do not indicate deliberate indifference to his serious medical needs. The medical personnel treating Ramirez were concerned about cancer early on--a September 1, 2003, x-ray indicated osteochondroma, and a December 11, 2003, bone scan raised concern about cancer. A January 28, 2004, MRI did not settle the issue whether Ramirez's exostosis was caused by cancer or a stress fracture. However, the possibility of a compression fracture was noted on September 4, 2003, yet the issue of cancer versus a fracture evidently was not decided until after a March 31, 2004, CT scan. The records suggest that it took medical personnel several months to diagnose the problem correctly, but that they ran numerous medical tests and attempted to diagnose the problem.

Once the fracture was diagnosed definitively, as reflected by an April 12, 2004, x-ray, Ramirez received a leg cast and crutches. When the cast frayed, it was wrapped in a bandage and Ramirez was given a garbage bag to wrap around it during showers. When the cast broke, the prison physician contacted the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

University of Texas Medical Branch (UTMB) and immobilized Ramirez's knee until he could be returned to UTMB for the cast to be fixed. UTMB personnel discussed various treatment options with Ramirez on May 3, 2004. Ramirez was wearing his long leg cast during his visit with the prison physician on June 4, 2004, though he evidently was not wearing it on June 11, 2004. However, he received shower passes and cane passes that lasted well into 2005. Moreover, Ramirez was given pain medications throughout the period, albeit commonly available ones.

The medical records indicate that medical personnel at the Eastham Unit and at UTMB knew about Ramirez's tibia problem, that they worked to diagnose it, and that they treated it in a medically appropriate manner. Ramirez thus has not demonstrated that the defendants knew of a substantial risk of harm to his health and that they disregarded the risk by failing to take reasonable measures to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Moreover, the delay in Ramirez's diagnosis and treatment did not cause him substantial harm--an August 1, 2005, x-ray did not indicate recent or acute bone pathology, though a broad based exostosis remained. Ramirez thus has not shown that the delay constituted an Eighth Amendment violation. See Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993).

The district court's determination that Ramirez's allegations lacked a basis in law and, therefore, were frivolous, was not an abuse of discretion. See Denton v. Hernandez, 504 U.S. 25, 31-33 (1992). We therefore affirm the dismissal of Ramirez's action as frivolous.

The district court's dismissal of Ramirez's action counts as a strike for purposes of 28 U.S.C. § 1915(g). See Adepegba v. Hammons, 103 F.3d 383, 387-88 (5th Cir. 1996). We warn Ramirez that once he accumulates three strikes, he may not proceed in forma pauperis (IFP) in any civil action or appeal unless he "is under imminent danger of serious physical injury. § 1915(g).

AFFIRMED. SANCTION WARNING ISSUED.