# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 10, 2022

Lyle W. Cayce
Clerk

No. 20-40498

Demetrius Sherman Joseph, Sr.,

*Plaintiff—Appellant*,

*versus*

William R. Jefferson, Jr.; Christopher A. Wood;
Annuncia Wright; Mark A. Callahan; Francisco Garcia;
Brandon Howard,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:17-CV-235

---

Before Stewart, Willett, and Oldham, *Circuit Judges*.

Per Curiam:*

Demetrius Sherman Joseph, Sr., an inmate in custody of the Texas Department of Criminal Justice ("TDCJ"), brought this 42 U.S.C. § 1983 suit against several prison officers alleging they used excessive force against

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

him. He also brought claims against a nurse at the University of Texas Medical Branch at Galveston alleging that she failed to provide adequate medical treatment. The district court severed the excessive force claims against the officers into a separate action and granted the nurse's motion for summary judgment. For the following reasons, we affirm.

## I. Factual & Procedural Background

Joseph alleges that several TDCJ officers used excessive force against him during incidents that took place in February 2017. According to Joseph, the first incident took place on February 14 while he was waiting for a physical. He alleges that, while seated in a chair, he got into an argument and subsequent altercation with officer William R. Jefferson, Jr., who punched him in the head, ear, neck, side, and cheek. He further alleges that officers Donnell D. Franklin and Christopher A. Wood then held him down, kicked and punched him, and slammed him to the floor. As a result, he claims that he suffered bruises and contusions, lacerations, and aggravation of an existing back condition.

After the incident, licensed vocational nurse Annuncia Wright attended to Joseph. Joseph alleges that Wright failed to examine his back for injuries, concealed his injuries to protect the officers, failed to prescribe him pain medication, failed to refer him for follow-up treatment, and failed to properly document his injuries. Wright's medical charts, on the other hand, indicate that she documented her treatment of Joseph, recorded his complaints of pain, observed no visible injuries or signs of respiratory distress, and concluded that no further treatment was necessary.

Joseph further alleges that he was assaulted for a second time later that day in his cell by officers Jefferson and Mark A. Callahan. He alleges that the two officers kicked him on the ground and then dragged him to a bunk. From there, he claims that Jefferson punched, kicked, and stomped him on his

back, side, head, and legs. Joseph complains that this incident was not reported, and that Wright did not examine him until two weeks later. Joseph avers that when Wright did examine him, she downplayed his injuries and failed to examine his back, though she referred him to a medical provider.

Joseph also alleges that he was sprayed with chemical agents the following morning. Wright attended to Joseph after this incident, took his vital signs, visually inspected him for injuries, documented his complaints, and noted no visible injuries but that he appeared to be in respiratory distress. Due to his respiratory distress, she directed security to take him for further medical evaluation.

Two days later, Joseph was seen by licensed practical nurse Kathryn Claud for the reported use of force incident that occurred on February 14. Claud observed small scrapes on his wrists, a small scrape on the back of his head, as well as redness, heat, and swelling on a surgical scar on Joseph's back. She then consulted with a doctor who ordered an x-ray of his lower back and Tylenol for pain. The x-ray showed no abnormalities and that the hardware in Joseph's back was intact.

Finally, Joseph appears to allege that he was subjected to a third use of force on February 28 that was never reported. The record indicates that Wright examined him on his day. She noted in his medical chart that he had no visible new injuries or respiratory distress but that he had complained of backpain and had been x-rayed.

In June 2017, Joseph filed a pro se complaint under 42 U.S.C. § 1983 alleging that the TDCJ officers' conduct constituted excessive force and that Wright failed to provide adequate medical treatment in violation of his constitutional rights. He sought declaratory, injunctive, and compensatory relief.

Wright moved for summary judgment, arguing that the Eleventh Amendment barred Joseph's claims for monetary damages against her in her official capacity and that she was entitled to qualified immunity. The magistrate judge agreed that Wright was entitled to qualified immunity and recommended granting her motion for summary judgment. Joseph objected to the magistrate judge's recommendation. The district court then severed the excessive force claims into a separate action and adopted the magistrate judge's recommendation to grant summary judgment in favor of Wright on Joseph's claims against her. Joseph appealed.

## II. STANDARD OF REVIEW

As a preliminary matter, we note that the district court severed the excessive force claims against Jefferson, Wood, Callahan, Garcia, and Howard into a separate action. "Severance under Rule 21 creates two separate actions or suits where previously there was but one. Where a single claim is severed out of a suit, it proceeds as a discrete, independent action, and a court may render a final, appealable judgment in either one of the resulting two actions[.]" *United States v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983). Accordingly, before this court is only Joseph's appeal of the district court's grant of summary judgment in favor of Wright on grounds of qualified immunity. Since final judgment was entered on those claims, we conclude that we have jurisdiction to review that order.

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if it could "affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A

dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* We view all evidence "in the light most favorable to the nonmoving party and draw[] all reasonable inferences in that party's favor." *Kariuki v. Tarango*, 709 F.3d 495, 501 (5th Cir. 2013). "[C]onclusional allegations and unsubstantiated assertions may not be relied on as evidence by the nonmoving party." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "A panel may affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 438 (5th Cir. 2012) (internal quotation marks and citation omitted).

## III. Discussion

When a government official performs discretionary functions, they are generally shielded from civil liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Under the test for qualified immunity, we ask "(1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident." *Domino v. Tex. Dept. of Crim. Justice*, 239 F.3d 752, 755 (5th Cir. 2001) (quoting *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998) (en banc)).

The Eighth Amendment "impos[es] a duty on prison officials to 'ensure that inmates receive adequate . . . medical care.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A prison official violates this duty when his or her "conduct demonstrates deliberate indifference to a prisoner's serious medical needs,

No. 20-40498

constituting an 'unnecessary and wanton infliction of pain.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

To prevail on his claim of deliberate indifference, Joseph must show that Wright had actual knowledge of a substantial risk of harm and disregarded that risk. *See id.* He cannot do so.

We begin with Joseph's argument that Wright was deliberately indifferent because she delayed providing him medical treatment. A delay will constitute an Eighth Amendment violation "if there has been deliberate indifference [that] results in substantial harm." *Easter*, 467 F.3d at 463. According to Joseph, Wright did not see him for two weeks after the second use of force incident that took place on February 14. The record evidence, however, reveals that Wright attended to Joseph the following day (February 15) after he alleged that he was sprayed with chemicals and another nurse attended to him two days later (February 17). During Wright's examination of Joseph on the 15th, she took his vital signs, visually inspected him for injuries, documented his complaints, and noted no visible injuries. She observed that he appeared to be in respiratory distress, however, so she sent him for further medical evaluation. When Joseph was seen by the second nurse on February 17, she confirmed in her records that he only had a few small scrapes on his wrists and head with some swelling on the surgical scar on his back. He was prescribed Tylenol and a subsequent x-ray of his back showed no abnormalities. These records rebut Joseph's argument that Wright was deliberately indifferent by delaying medical treatment. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").

We next turn to Joseph's argument that Wright was deliberately indifferent by failing to examine his back and prescribe him pain medication.

6

No. 20-40498

Wright's motion for summary judgment included the medical records from the three times she saw Joseph. During those interactions, she noted Joseph's complaints, examined him for injuries, and provided her assessment. According to Wright's notes, she often observed no visible injuries or signs of respiratory distress. On at least two occasions, however, she referred him for further medical evaluation after determining that it was warranted. Consequently, these records also rebut Joseph's argument that Wright was deliberately indifferent by declining to further examine his back or prescribe him pain medication. *See Banuelos*, 41 F.3d at 235.

Based on this evidence, Joseph has failed to show that Wright was deliberately indifferent to his serious medical needs. Instead, the competent summary judgment evidence shows that Wright evaluated Joseph and provided an assessment that she determined to be appropriate. Though Joseph disagrees with Wright's decision not to further examine his back or prescribe him pain medication, his mere disagreement with her treatment decisions does not rise to the level of a constitutional violation. *See Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999) ("Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs."). Because Joseph has failed to show that Wright was deliberately indifferent to his medical needs, he has not shown a constitutional violation took place. Accordingly, the district court did not err in holding that Wright was entitled to qualified immunity. *See Domino*, 239 F.3d at 755.

## IV. CONCLUSION

The district court's summary and final judgments in favor of Wright are AFFIRMED. All pending motions are DENIED.